J-M06005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| RYAN DEN-ZEL PERRY | : | |
| Petitioner | : | No. 74 WDM 2024 |

Appeal from the Order Entered September 6, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004532-2024

BEFORE:  SULLIVAN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: January 28, 2025**

Petitioner, Ryan Den-Zel Perry ("Petitioner"), filed a "Petition for Specialized Review" ("Petition"), seeking review of the September 6, 2024 order of the Court of Common Pleas of Allegheny County, which denied Petitioner's motion for modification of bail.  The Commonwealth filed a response.  Upon review, we affirm.

We briefly summarize the pertinent facts and procedural history.  In connection with a nighttime drive-by shooting incident on March 2, 2024, in Penn Hills, Pennsylvania, Petitioner was charged with attempted homicide, aggravated assault, discharging a firearm into an occupied structure, tampering with physical evidence, and four counts of recklessly endangering

another person ("REAP").[1]  On May 24, 2024, Petitioner was preliminarily arraigned by a magisterial district judge, who denied bail.  On May 31, 2024, Petitioner appeared before the trial court for a bail modification hearing.  At the hearing, Lindsay Black, from Allegheny County Pretrial Services, stated that Petitioner was "a no-release recommendation" based on his thirteen prior arrests, and three felony and four misdemeanor convictions.  N.T. Hearing, 5/31/24, at 3.  The Commonwealth did not present any evidence.

Petitioner, however, called to the stand his mother, Charlene Thompson, who testified that Petitioner is a young father of six children who not only is involved in their lives, but also recently started his own landscaping business with Ms. Thompson's help.  *Id.* at 7.  According to Ms. Thompson, Petitioner's "blooming" business is his only source of income to support his children.  *Id.* Ms. Thompson testified that she was concerned that Petitioner's business would suffer because of his incarceration.  *Id.* at 7-8.  Ms. Thompson further testified that she currently resides in Wilkinsburg with her oldest son, who does not have a criminal history.  *Id.* at 8.  On cross-examination, Ms. Thompson stated that she did not know the shooting victims.  *Id.* at 9.

At the conclusion of the hearing, the trial court stated that it would review the affidavit of probable cause, which neither party had introduced or

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 2707.1(a), 4910(1) and 2705, respectively.

admitted into evidence. *Id.* at 9-10. Following the hearing, the trial court denied bail without providing any reason for its decision.

On July 1, 2024, Petitioner appeared for a preliminary hearing, at which the Commonwealth presented the testimony of the victim, C. Webb Jackson. Mr. Jackson testified that he was shot on March 2, 2024. N.T. Preliminary Hearing, 7/1/24, at 4. Mr. Jackson then identified Petitioner as the shooter. *Id.* at 4-5. Mr. Jackson testified that he had known Petitioner for "two plus years" from "the neighborhood." *Id.* at 5. Mr. Jackson recalled that, on the night of the incident, he had seen Petitioner with an unknown individual in a silver SUV with dark-tinted windows, later described as a Chevrolet Equinox, outside of Mr. Jackson's restaurant. *Id.* at 5, 11, 20. Mr. Jackson testified that around midnight and 1:00 a.m., while he was standing in the doorway of his restaurant using his phone, he was shot at ten times with one bullet striking his stomach and another hitting his "right butt cheek." *Id.* at 6-7. As a result of his injuries, Mr. Jackson spent one and a half months in a medically induced coma. *Id.* at 6, 19. Further, Mr. Jackson has difficulty walking without assistance and cannot move his left shoulder. *Id.* at 6. Mr. Jackson recalled that, at the time of the shooting, the mother of his children, his daughter, and others were in the restaurant, roughly ten to fifteen feet away. *Id.* at 7.

On cross-examination, Mr. Jackson clarified that the incident occurred late on Friday, March 1, 2024, into early Saturday, March 2, 2024. *Id.* at 8. Mr. Jackson stated that his restaurant was open at the time of the shooting

and that customers were "coming in" to order food. *Id.* at 9. Specifically, he recalled that when he was on the ground bleeding, "there were still customers coming in and out, on their phones, … taking pictures, … some people were still trying to order, there was still food being cooked as it happened." *Id.* According to Mr. Jackson, he had observed the silver SUV circling the block for 45 minutes. *Id.* at 11, 14. Despite noticing two occupants, Mr. Jackson could not recall who was driving the vehicle. *Id.* at 11-12. Specifically, Mr. Jackson could not remember whether Petitioner was the driver or the passenger of the SUV. *Id.* at 12. Mr. Jackson stated that, while he recognized Petitioner, he had no reason to fear him as they had no prior confrontation. *Id.* at 13. He stated that the last time he saw Petitioner was two years before the shooting incident. *Id.* Finally, Mr. Jackson stated that he did not see the shooter, but did see sparks coming from the area of where the vehicle was parked. *Id.* at 15-16.

Following the hearing, the charges were held for court. On August 16, 2024, Petitioner filed another motion for modification of bail. On September 5, 2024, the trial court held a hearing on the motion. At the start of the hearing, Vincent Sammartino, from Allegheny County Pretrial Services, stated that "[o]ur recommendation is no release due to the nature of the charges in conjuncture [*sic*] with [Petitioner's] criminal history[,] which in his criminal history[, Petitioner] does have two felony firearm convictions." N.T. Hearing, 9/5/24, at 2. The Commonwealth did not present any testimony.

Counsel for Petitioner argued that Petitioner should be placed on electronic home monitoring at his mother's house, which "is nowhere near the alleged victim." *Id.* at 4. At the close of the hearing, Petitioner's counsel, without any objection by the Commonwealth, provided a copy of the July 1, 2024 preliminary hearing transcript to the trial court. *Id.* at 7. On September 6, 2024, the trial court once again denied Petitioner's motion for bail without providing any reason for its decision.

On October 4, 2024, Petitioner filed the instant Petition, presenting a single issue for this Court's review:

> Did the bail court violate Article I, Section 14 of the Pennsylvania Constitution and *Commonwealth v. Talley*, 265 A.3d 485 (Pa. 2021)[,] in denying [Petitioner] bail where the Commonwealth failed to offer "evident" proof or establish a "great" presumption that [Petitioner] presents a danger to any person and the community, which cannot be abated using any available bail conditions such as electronic home monitoring?

Petition, 10/4/24, at 7.

Generally, this Court reviews orders denying bail for an abuse of discretion, reversing only where the trial court misapplies the law, or its judgment is manifestly unreasonable, or the evidence of record shows that its decision is a result of partiality, prejudice, bias, or ill will. *See Commonwealth v. Bishop*, 829 A.2d 1170, 1172 (Pa. Super. 2003). Moreover, this Court's scope of review from the denial of bail is limited to the record evidence adduced at the bail hearing and the findings of the lower court, reviewed in the light most favorable to the prevailing party. *Talley*, 265 A.3d at 527. This Court will affirm the trial court's denial of bail "if [the

- 5 -

court's] factual findings are supported by competent evidence of record, and [its] legal conclusions drawn therefrom are correct." ***Id.*** The right to bail,[2] with certain exceptions, is enshrined in Article I, Section 14 of the Pennsylvania Constitution, which provides, in pertinent part:

> All prisoners shall be bailable by sufficient sureties, unless for capital offenses or for offenses for which the maximum sentence is life imprisonment or unless no condition or combination of conditions other than imprisonment will reasonably assure the safety of any person and the community when the proof is evident or presumption great[.]

PA. CONST. art. I, § 14.

The ***Talley*** Court explained:

> Proof is evident or presumption great calls for a substantial quantity of legally competent evidence, meaning evidence that is admissible under either the evidentiary rules, or that is encompassed in the criminal rules addressing release criteria. The Commonwealth's feelings about evidence that it may be able to introduce are not relevant considerations. And, because a court must be able to evaluate the quality of the evidence, it also cannot rely upon a cold record or untested assertions alone. When the Commonwealth seeks to deny bail, the quality of its evidence must be such that it persuades the bail court that it is substantially more likely than not that the accused is nonbailable, which is just to say that the proof is evident or the presumption great. In making its case, the Commonwealth cannot satisfy its burden of persuasion solely by stacking inference upon inference. Nor can the connection between the evidence and what it seeks to prove be conjectural. Rather, the combination of the evidence and inferences must be reasonable, credible, and of solid value.

_____

[2] The fundamental purpose of bail is to ensure the accused's presence at trial. ***Talley***, 265 A.3d at 515 n.18; ***see also*** Pa.R.Crim.P. 103 (defining bail as "the security or other guarantee required and given for the release of a person, conditioned upon a written undertaking, in the form of a bail bond, that the person will appear when required and comply with all conditions set forth in the bail bond").

*Talley*, 265 A.3d at 524-25 (quotation marks, brackets, and citations omitted). Put differently, the Court determined that courts are required to consider testimony, exhibits or other competent evidence when ruling on a motion for bail. *Id.* at 527-28 (holding that "an affidavit of probable cause simply is not conducive to assessing the persuasiveness of the Commonwealth's case under the [substantially more likely than not standard]").

After conducting a thorough analysis of a defendant's right to bail pursuant to Article I, Section 14 of the Pennsylvania Constitution, the *Talley* Court concluded:

> [A] trial court may deny bail under Article I[,] Section 14 when the Commonwealth's proffered evidence makes it substantially more likely than not that the accused: (1) committed a capital offense, (2) committed an offense that carries a maximum sentence of life imprisonment, or (3) presents a danger to any person and the community, which cannot be abated using any available bail conditions. That determination requires a qualitative assessment of the Commonwealth's case.

*Talley*, 265 A.3d at 525-26. The Court provided a non-exhaustive list of factors a trial court should consider in denying bail. They include: (1) the defendant's character, (2) relevant behavioral history or past patterns of conduct, (3) the gravity of the charged offense, (4) the conditions of bail reasonably available to the court, and (5) any evidence that tends to show that those conditions would be inadequate to ensure the protection of any

person or the community.[3]  *Id.* at 525.  Thus, according to the Court, "[i]f the balance of the evidence is rife with uncertainty, legally is incompetent, requires excessive inferential leaps, or lacks any indicia of credibility, it simply is not evident proof, nor can it give rise to a great presumption, that the accused is not entitled to bail."  *Id.* at 526.

Moreover, Rule 520 of the Pennsylvania Rules of Criminal Procedure provides that "[b]ail before verdict shall be set in all cases as permitted by law. Whenever bail is refused, the bail authority shall state in writing or on the record the reasons for that determination."  Pa.R.Crim.P. 520(A). Similarly, Rule 1762(e) of the Pennsylvania Rules of Appellate Procedure provides in pertinent part that "[u]pon receipt of a copy of … a petition for specialized review … that does not include an explanation for the bail determination, the judge who made the bail determination being reviewed

_____

[3]  These factors either largely mirror or overlap with factors set forth in Pa.R.Crim.P. 523(A), relating to release criteria.  The Rule 523(A) factors include: (1) the nature of the offense charged and any mitigating or aggravating factors that may bear upon the likelihood of conviction and possible penalty; (2) the defendant's employment status and history, and financial condition; (3) the nature of the defendant's family relationships; (4) the length and nature of the defendant's residence in the community, and any past residences; (5) the defendant's age, character, reputation, mental condition, and whether addicted to alcohol or drugs; (6) if the defendant has previously been released on bail, whether he or she appeared as required and complied with the conditions of the bail bond; (7) whether the defendant has any record of flight to avoid arrest or prosecution, or of escape or attempted escape; (8) the defendant's prior criminal record; (9) any use of false identification; and (10) any other factors relevant to whether the defendant will appear as required and comply with the conditions of the bail bond.

shall forthwith file of record a brief statement of the reasons for the determination[.]" Pa.R.A.P. 1762(e).

With the foregoing standard in mind, we now turn to Petitioner's claim that the trial court abused its discretion in determining that the Commonwealth established by evident proof and great presumption that Petitioner was not entitled to bail. In support, Petitioner argues that the Commonwealth failed to present any evidence at either the May 31, 2024 or the September 5, 2024 hearing to establish that it was substantially more likely than not that Petitioner would harm someone if released and that no condition of bail within the court's power could reasonably prevent him from inflicting harm. According to Petitioner, the Commonwealth relied, at best, upon the affidavit of probable cause at the May 31, 2024 hearing and the July 1, 2024 preliminary hearing transcript at the September 5, 2024 hearing, without introducing and admitting either document into the record. **See** Petition at 11-12.

Petitioner further claims that "the Commonwealth has never—at either bail hearing—clearly stated its intent 'to take the extreme step of denying [Petitioner's] state constitutional right to bail altogether.'" **Id.** at 12. Petitioner points out that the trial court acted entirely on its own initiative, rendering meaningless the **Talley** standard, when it denied his request for bail. **Id.** at 13. Specifically, Petitioner argues that the trial court did not engage in a qualitative assessment of the Commonwealth's case and violated his rights when it denied his request for bail "without requiring the

Commonwealth to meet the deliberately 'high evidentiary standard' **Talley** prescribed." **Id.** at 15. Petitioner finally claims that the trial court "switched hats" when it denied his motion for bail on its own initiative. **Id.** at 14. In so doing, "[t]he bail court unconstitutionally discharges the Commonwealth of its assigned burdens, abandons its own role as arbiter, and assumes the role as advocate for the Commonwealth." **Id.** Petitioner requests that this Court direct the trial court to release him on reasonable bail with appropriate conditions or, in the alternative, direct the trial court to conduct another evidentiary hearing to determine whether the Commonwealth can satisfy its burden under **Talley**. **Id.** at 16.

In response to the Petition, this Court directed: (1) the trial court to state on the record its reasons, as required under Rule 1762(e), for the September 6, 2024 denial of Petitioner's motion for modification of bail; and (2) the Commonwealth to respond. In its statement of reasons, the trial court explained that, in considering the Rule 523 factors and the **Talley** decision, it denied Petitioner's motion for bail modification on five principal grounds. First, the court reasoned that Petitioner has a significant criminal history that consists of fourteen prior arrests and three felony convictions, two of which are firearms convictions, and the other being a crime of violence in the nature of simple assault. Second, the court noted that Petitioner has two pending cases, both of which have had a preliminary hearing and have been held for court. Third, the instant case includes charges of criminal attempt (homicide), aggravated assault, discharge of a firearm into an occupied structure, and four

counts of REAP. Fourth, the court noted that Allegheny County Pretrial Services, using a nationally recognized evaluative criteria, recommended no release for Petitioner. Lastly, the court explained that, following the September 5, 2024 hearing, it determined the Commonwealth had met its qualitative and quantitative burden under **Talley**. The court, therefore, urges this Court not to disturb its bail determination.

On October 22, 2024, the Commonwealth responded to the Petition, conceding that "it did not call any witnesses at either bail hearing, nor did it mark and submit any exhibits into evidence." Response, 10/22/24, at 4. However, the Commonwealth points out that it was Petitioner's counsel who provided the July 1, 2024 preliminary hearing transcript to the trial court at the September 5, 2024 hearing. **Id.** The Commonwealth claims that because the trial court considered the preliminary hearing transcript, it had a sufficient basis under **Talley** upon which to deny bail. **Id.** at 5. In addition to recounting the serious nature of Petitioner's charges and his extensive criminal history, the Commonwealth notes "the facts of the crime suggest that Petitioner and his accomplice were, essentially, lying in wait by circling the parking lot for 45 minutes, waiting for an opportunity to shoot the victim." **Id.** The Commonwealth urges this Court to affirm the trial court's September 6, 2024 order denying Petitioner's motion for modification of bail.

Given the record before us, the arguments of both parties, and the statement of reasons offered by the trial court, we do not conclude that the court's decision to deny Petitioner bail was an error of law, manifestly

unreasonable, or the result of any partiality, prejudice, bias, or ill will. ***See Bishop***, ***supra***. The court cited the seriousness of Appellant's present charges and his significant criminal history, which includes 14 arrests, and prior convictions involving firearms and a violent offense. The court also had before it the transcript of Appellant's preliminary hearing, where the victim detailed the shooting and identified Appellant as his attacker. At the bail hearing, the Commonwealth further stressed that it was working "to get relocation services for the victim due to the safety concerns that were raised by the victim after the preliminary hearing." N.T. Hearing, 9/5/24, at 6. In light of this record, we discern no abuse of discretion in the court's decision to deny bail, as there was sufficient evidence that Appellant would present a danger to the victim and/or the community if released. Accordingly, we affirm the court's order denying Petitioner's request for bail.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/28/2025